May I reserve five minutes? Mr. Plum? Yes, good morning, Your Honor. Good morning. Are you guys ready? Yes, go ahead. May I reserve five minutes, please? Take a look at the clock yourself because we won't remind you. All right. I'll do my best to make sure. Good morning. I represent Sylvia Ferrara. I'm here because she believes, and I believe with her, that this Court should reverse this Court's decision in granting summary judgment amidst Ferrara's retaliation claim against the TSA. When viewed in the light most favorable to the appellant, there are sufficient disputed facts, material facts, that could support a jury finding that Ferrara was the victim of retaliation for her participation in the EEO process. Let's go directly to that material fact. What is a material fact which a reasonable juror could find from this evidence? I think there are a number of them, Your Honor. The one we primarily relied on in the District Court was the temporal proximity in that there's, as the Court noticed, in the causation analysis, there was a little over three months between when Sylvia Ferrara settled her EEO case, which resulted in the removal of a letter of reprimand from her file because of discrimination, to the day that she was terminated by the TSA. And if you go beyond that, there's also issues that the TSA's, one, deviation from procedure can be used to determine whether there was retaliation. And in this case, from the top to the bottom of the incident that got Ms. Ferrara fired, there was deviation from TSA's procedure. Of leaving a binder out of the security. Now, it starts with the first woman who says, we need to distribute the, I'm blanking on her name and I apologize, but we need to distribute these to all the terminals. The TSA policy is, don't distribute them to the terminals. That's a no-no. She sends it to the terminals. All of the terminal people also should know that that's TSA procedure. None of them send it back up or say, hey, wait, are you sure we should be having these here? Let me see if I follow you. There was a document, the name of which you can't recall immediately, which should not have been distributed to the terminal, which she did distribute to the terminal. Your Honor, there's the spot SOP. That's the document that should not have been distributed to the terminal. There is a separate TSA procedure policy that states that you do not distribute those to the terminals. Help me out. What does that document say? Can you know? I don't have it. It's in the brief. We quote it in the brief. We quote the exact location of where it is there. I'm trying to get a handle on how important the facts in that document are to the security of the nation. Well, TSA feels that they need to be secured, and they can't be distributed to the terminals. But they were distributed.  So the way Ms. Ferrara wound up with one is that her terminals and the terminal next to hers were distributed to Ms. Richards. Ms. Richards sent somebody over to Ms. Ferrara's terminal, and that person left the binder on the podium with her. According to Ms. Ferrara, he never told her what she was to do with that or why he was delivering it. Ms. Ferrara finished her shift, and she left. At some point later, a gentleman named Dedrick Scott went to that podium. He picked up the binder, and that binder was never seen again. And at some point, after Scott picks up the binder, somebody in management realizes, hey, wait, these shouldn't be out there, and they call them all back. And at the end of this, and this goes to the second reason outside of the temporal proximity, the disparate treatment of different employees. At the end of this, let's talk about that. Okay, at the end of this, the person who sends out the binders, the person who distributes the binders, none of the people who kept the binders at the terminal, and the person who actually physically lost the binder were not punished in this. That would be grounds for a release, would you not, that she lost it or misplaced it or something like that? Yes, but she knows where she left it. There's somebody who actually had it, and they lost it, could not find it. I would agree that it could be a ground for some punishment on everybody involved in this. But nobody involved in this was punished in any manner. John, as I understand your position, it's that the supervisor, Mr. Scott, lost the binder. Yes, the person who actually lost the binder was Mr. Scott, and that's on the CCTV footage. Your Honor's showing that he went to the, he picked up that binder and left the podium with it. So what I wanted to know was this. I know that the security officer, Ferrara, has a duty to keep binders confidential. What is there in the record that imposes any duty on the supervisor who had a different title and didn't have the job of maintaining the binders? All right. So, Your Honor, in the TSA, there are policies, and unless they specifically say this policy applies to the TS, the frontline TSOs or the supervisors or management, then they apply to everyone in the TSA. And that includes this one, which says don't distribute the spot SOP. It should not be at the terminals. And certainly this person, if he was going to take it, he should have taken it, put it either in a secure filing cabinet that they have at the terminal or returned it to the main office. But these policies apply to everyone. Counsel, does the record tell us what happened to this binder? Yes, Mr. Scott picked it up and then he lost it. That's where the record ends as far as the journey of the binder. But my note here shows that Mr. Scott was not subject to the same rules as was your client, the LCA, whatever LCA stands for. The LCA stands for last chance agreement, Your Honor. So subsequent to her settling her EEO case, she was punished for inappropriate behavior outside of work. Right. Video. Yeah. She had pictures on Facebook. And in lieu of being fired. They were given a last chance agreement, but Scott was not given a last chance agreement. No, but Scott was not punished at all, Your Honor. At all. That's the point of that. And then lastly, there's the issue of the hostility, the hostility that Garcia Hamilton had towards my client. When she issued the last chance agreement, she told my client she could not review it, either sign it now or you're gone by the end of the day. She told my client she could not take it and have a lawyer review it, despite the fact that it includes a clause that says that my client, Ms. Ferrara, was prohibited from filing a discrimination case against the GSA. That kind of a waiver doesn't sound very legal to me. It doesn't. And the judge below kind of said that's not something you can do. Do you want to say five minutes? You've got six. Let me go through my notes real quick. Oh, I just point out that Ms. Ferrara had an exemplary record before this happened. Before she got the letter of reprimand, she had worked there for nine years or more. Before she got the letter of reprimand, which is subsequently removed from her file, she had not been subject to any discipline by the GSA. So the letter of reprimand for her video appearance on Facebook had been withdrawn before she left the binder at the podium? So it's two different incidents, I guess, Your Honor. So I don't remember what the subject of the letter of reprimand was, but after the settlement in that case is when the Facebook punishment, the last chance agreement came to bear. And with that, I will leave you with, when viewed in the light most favorable to the appellate, there is sufficient evidence of a material disputed fact that warned this case being submitted to the jury. And based on this evidence, a jury could determine that Ferrara was the victim of retaliation for her participation in the EO process. And I'll preserve the rest of my time. Thank you. Thank you very much. Good morning. May it please the Court, Paul Bartgreen, appearing on behalf of the appellee, Alejandro Mayorkas, Secretary of DHS. Your Honors, I would like to start by addressing the chronology, clear that up a bit. So Ms. Ferrara filed her initial EEO case, that's not at issue here, in 2011, when she received a letter of reprimand for not following instructions. She filed a discrimination case based on that. And in 2013, that was settled. That was settled? That was settled, correct, in 2013. Then in April of 2013, Ms. Ferrara was suspended for posting topless photos on the Internet that were accessible to the public. How much time did that elapse from the time that they settled the case? Roughly a month, Your Honor, but that notice of suspension is not at issue here. What is at issue in this case is that in the course of responding to the notice of suspension, Ms. Ferrara lacked candor in responding to TSA officials' questions, and in addition she failed to designate a representative, a TSA employee who had helped her respond to the notice of suspension. So the removal that was proposed in April of 2013 was for the lack of candor to TSA officials and for failing to designate a representative. That was the basis for the initial removal. It's against the TSA rules for one TSA employee to represent another TSA employee in an employment dispute? It's something that can be, Your Honor. TSA is, the TSA employee is supposed to notify TSA if another TSA employee is helping them in responding to a suspension notice. But if that employee does so notify the person who's helping her and she get into trouble? The individual that gets into trouble is the employee that fails to provide notice to the TSA. So the TSA can consider whether or not there's a conflict of interest and whether or not the other TSA employee's representation would take away from TSA resources or TSA time. So TSA reserves the right to tell an employee whether a fellow employee can represent her? That's not precisely in the record, Your Honor. What's in the record is the policies that TSA should be notified of the representation. And in this case, another TSA employee had provided her with a form that she used to respond to the suspension notice. And she doesn't use it? She used the other TSA employee's form to write an 18-page letter brief to respond to the notice of suspension. Okay. She complains that your client wouldn't let her take it to a lawyer or take it home for the evening or anything. She had to sign it right there. Does that have any bearing in this case? No, it doesn't, Your Honor. Because the TSA on appeal is not arguing that the last chance agreement is a defense to Ms. Ferrara's claims. Before the district court, the TSA argued that the last chance agreement barred all of her claims. The district judge initially agreed with the TSA on a motion to dismiss on a motion for a summary judgment. However, after considering Ms. Ferrara's testimony, without considering its credibility but only looking at the testimony, it determined that the last chance agreement did not bar all of the claims. So it is not necessary for this court to address whether or not the last chance agreement is enforceable. Your Honors, I would like to turn to pretext. So even assuming that Ms. Ferrara established a prima facie case, she did not show that the TSA's reasons for her termination were pretext for retaliation. To establish pretext, Ms. Ferrara must show that the TSA did not honestly believe its reasons for removal. Ms. Ferrara did not. To do that, Ms. Ferrara had to present direct evidence of retaliation. She hasn't presented that, or she has to present substantial and specific circumstantial evidence, which she also has not offered as to either her initial removal or the reinstatement of a removal. So focusing on the June 2013 removal, that was the one where she was removed for her lack of candor in responding to TSA employees' questions about who had helped her with the notice of suspension proposal, as well as her failure to designate a representative, Ms. Ferrara relies solely on temporal proximity. That is the time between the settlement of her 2011 EEO complaint. Which was in 2013. Correct, Your Honor. And when was action taken against her for leaving the binder on the podium? Action was taken against her in July of 2013. July of 2013. Correct, Your Honor. So one month after the LCA. Correct, Your Honor. So jumping to the last chance agreement, Your Honor, Ms. Ferrara was removed on June 18th of 2013. When she was presented with her notice of removal, she asked, and this is in her testimony, if there's anything she could do to not get fired. It was only then that she was offered the last chance agreement. The last chance agreement, you'll see in her testimony, she described as being a wonderful thing because it allowed her to keep her job. It was a benefit to her. However, a month later, she violated the terms of the last chance agreement, which required her to follow TSA policies. She was working at a podium at TSA where she was a transportation security manager. She was supervising 50 to 70 employees. And she received a copy of the TSA's sensitive security information. The specific information was the standard operating procedures for screening passengers at TSA checkpoints. This is information that, if disclosed, could be detrimental to the traveling public. You'll see. That happened about a month after the last chance LCA. Correct, Your Honor. But three months after the settlement of her prior EEO activity, and two years after the initial filing of that EEO complaint. And that record is undisputed that Ms. Farrar violated TSA policy with the sensitive security information. In the record are still shots of the video footage. The entire video that Mr. Blum referred to is not in the record, only the still shots. It shows that she received the binder with a pink cover. An employee speaks to her about the binder, and then she puts it to the side on the podium where it's left. There's not evidence in the record about how the binder was lost. What there is evidence in the record of is that Ms. Farrar failed to secure the binder. She admitted to that at deposition as well, and she also admitted that she violated TSA policy. Counsel, if I could ask a question. Yes, Your Honor. What are the dangers to the public if this confidential information on screening passengers by observation is disclosed? Yes, Your Honor. My understanding is that it describes the procedures used by TSA employees for screening passengers. So if in the wrong hands, that can be used to get around those procedures or get past the screening checkpoint at the airport. Thank you. Thank you. But the actual standard operating procedures, though described in the briefs, are not in the record precisely because they're sensitive security information. One of her arguments is that nobody else was punished in any way. She was pulled out and punished and lost her job because of this violation. Yes, Your Honor. So two responses to that. So there's nothing in the record establishing that anyone else violated or failed to secure the binder. In fact, it shows the opposite. Lost Scott. There's no evidence about what happened to the binder with Mr. Scott. Scott lost the binder. I don't believe that's established affirmatively in the record, Your Honor. That's Ms. Farrar's allegation about Mr. Scott. Well, an allegation is not material on a motion for summary judgment. Is there a declaration? Mr. Blum might be able to look at that. Are there any facts in the record that Scott, A, had a similar binder? B, lost the binder. C, was not punished. There is evidence in the record that Mr. Scott had the binder at some point after Ms. Farrar, but there's not evidence that he lost the binder. What Ms. Farrar should have done with the binder is that she should have secured it, which there is clearly evidence in the record that she failed to secure it. And I think that if he possessed the binder after Farrar had the binder and there's no further evidence where the binder ended up, then isn't it informable by a reasonable juror that Scott lost the binder? We're on motion for summary judgment. All intent and that's in favor of the non-moving party, right? Yes, Your Honor. And I got the answer to that. Go ahead. Your Honor, if I can address that, though, I think that goes to whether or not Mr. Scott is a comparator. And on that point, the employee has to be similarly situated in all respects. And there's two great differences between Mr. Scott and Ms. Farrar. The first is Mr. Scott does not have the record or history of misconduct that Ms. Farrar did. And secondly, Mr. Scott was not on the last chance agreement. There is no evidence in the record that any other employee was on a last chance agreement like Ms. Farrar. And I would point Your Honors to Leong v. Potter. It's not cited in the answering brief. So I'll give the cite 347F3RD1117. And in that case, this court specifically said for the comparator analysis, whether or not an employee is on a last chance agreement is relevant to the comparator analysis. Would you give me that case again? Sure. It's Leong v. Potter. And it's at 347F3RD1117. It's a 2003 decision. And just one more point on the comparators, Your Honor. Ms. Farrar is using comparators from her discrimination claim, which she has abandoned. So these comparators from a discrimination claim do not apply to the retaliation claim. There simply is not evidence that the TSA terminated her because of her 2011 EEO complaint. Counsel, Judge Gould, if I could ask you a question. Yes, Your Honor. So what are the duties of the Supervisor Scott with regard to maintaining this confidential information? Your Honor, the TSA police provide that with sensitive security information, it must be secured. There is not evidence in the record as to what Mr. Scott did with the binder, if he in fact had it. What is in the record is that Ms. Farrar had the binder. When she was asked about it later, she put it aside and doesn't remember what she did with it. So there's clear evidence that Ms. Farrar did not secure the binder. And I think more importantly, there's not evidence that any TSA harbored any animosity toward Ms. Farrar that can be considered retaliation because of her 2011 EEO complaint. What was the basis of her 2011 EEO complaint? The letter of reprimand she received for not following instructions was discrimination. Discrimination on what basis? I do not know the specifics of that, Your Honor. But I thought that the allegation was that it was discrimination based on race because she was Hispanic, race or origin or nationality. That could be, Your Honor. And I see my time is up, but I would just point out that the decision makers in 2013 were not involved in the 2011 complaint or the resolution of that complaint. Are there any other questions? We ask the Court to affirm the District Court's judgment. Thank you, Your Honors. Mr. Blum, you've got to tie into the 2011 civil rights complaint, which was settled in 2013, in order for there to be a retaliation basis to your present complaint. In order for there to be a temporal proximity, yes, Your Honor. If she was being fired not because she filed a race or gender discrimination complaint in 2011, but because she violated her LCA by leaving a binder, which LCA arose out of a video incident, then you don't have a civil rights complaint, correct? Yes, Your Honor. But the settlement of that 2011 EEO complaint is also an EEO event. That case was settled. She resolved that case in her favor, and that letter of reprimand was removed from her file. So that was the EEO event, and that's what the District Court found as well. Did she have a last chance when this happened, when she lost the file? No, that happened when she had the file, yes. She did not have a last chance. Yes, yes. But before I run out of time, I'd like to point the Court to, it had a question when I was up the first time, about where it is that this applies to everyone, including Mr. Scott and all the other managers, and that's at page 14 of our opening brief. Well, Scott is not comparable in two regards. He has no prior history of misconduct the way that Ferrara has, and secondly, he was not under a last chance agreement, which isn't that a separate fact of incomparability under Leong versus Hatter? Or do you disagree with his citation? I understand what he's saying. I don't think that it applies in this case, in a case where the management directive about SSI applies to all of the employees. So regardless of whether you're the perfect employee or you've messed up in the past, that your responsibility to secure sensitive security information like the spot SOB applies. And the evidence, the totality of the circumstances here, the totality of the evidence with the hostility of Cunningham towards Ms. Ferrara, and then the fact that nobody, even people who are at the same or higher level than Ms. Ferrara, don't get in trouble for releasing the sensitive security information to the terminals where it's not supposed to be. And with respect to the evidence of what happened to the binder, that's at page 41 of our brief, where it lists the facts, and those facts are based on admissions from the TSA and their request for admissions. Go ahead. Is there an affidavit in the file that shows that Scott, in fact, lost the binder? I don't believe there's an affidavit in the file, Your Honor, but there are admissions from TSA that, one, Scott had the binder, and two, they don't know what happened after Scott had the binder. There's no determination that it ever was returned. There's no determination that anybody ever found it. And that's at page 41 and 42 in the brief where we talk about the factual basis for what, or the facts about Mr. Scott. And, again, he was not punished. You know, Ms. Richard, the one who actually received and signed for the spot SOP, she signed for it. She sent the TSO over to Ms. Ferrara's terminal to deliver it to her. Ms. Ferrara never signed for that. Ms. Richard signed for that, and she was responsible for it. Again, no punishment towards her. And just in summation, Your Honor, in case I'm running out of time again, I'd just like to point out that when you look at the totality of the circumstances in the light most favorable to my client, I think it's pretty clear that there are material disputed facts that should allow my client to bring her case to adjournment. Thank you. Thank you very much. If I may, in the case of Sylvia Ferrara v. Alejandro Mayorkas, that will be submitted.
judges: Siler, GOULD, BEA